## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Christine M. Arguello

Civil Action No. 12-cv-01310-CMA-MEH

BRUCE BAUMANN,

     Plaintiff,

v.

FEDERAL RESERVE BANK OF KANSAS CITY,
TROY ERICKSON, in his individual and official capacity, and
TROY GIBSON, in his individual and official capacity,

     Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on the Motion for Summary Judgment, filed by Defendants Federal Reserve Bank of Kansas City ("FRB"), Federal Reserve Law Enforcement Officer ("FRLEO") Troy Erickson, and FRLEO Troy Gibson.  (Doc. # 50.) The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) over Plaintiff Bruce Baumann's 42 U.S.C. § 1983 claim, while 28 U.S.C. § 1367 provides supplemental jurisdiction over his state law claims.  For the reasons discussed below, Defendants' motion is denied.

## I.  **BACKGROUND**

The FRB is a corporation incorporated under laws of the United States.  Its head office is in Kansas City, and it maintains three branch offices, including one in Denver, Colorado.  The FRB comprises one of twelve regional Federal Reserve Banks which,

with the Board of Governors of the Federal Reserve System, make up the Federal

Reserve System.  Under 12 U.S.C. § 248(q)(2), the Board of Governors is empowered

to "delegate authority to a Federal reserve bank to authorize personnel to act as law

enforcement officers to protect and safeguard the bank's premises, grounds, property,

personnel, and operations conducted by or on behalf of the bank."  As a general matter,

FRLEOs have authority to conduct law enforcement activities subject to certain

regulations, including Federal Reserve regulations and policies and procedures issued

by the reserve bank.  However, the parties agree that, as employees of a corporation,

FRB employees, including FRLEOs, "are not government employees."[1]  (Doc. # 50 at 2;

Doc. # 70 at 1.)

    According to the Uniform Regulations for Federal Reserve Law Enforcement

Officers, FRLEOs "may only be cross-designated or deputized as state or local law

---

[1] The parties cite no Tenth Circuit authority, nor is the Court aware of any, commenting on whether FRLEOs are governmental actors for purposes of § 1983.  In certain contexts, courts have found Federal Reserve Banks and/or their employees to be federal actors or instrumentalities.  *See United States v. Hollingshead*, 672 F.2d 751 (9th Cir. 1982) (holding Federal Reserve Bank employee to be "public official" under the Federal Bribery Statute, 18 U.S.C. § 201); *Federal Reserve Bank of St. Louis v. Metrocentre Imp. Dist.*, 657 F.2d 183 (8th Cir. 1981) (holding that Federal Reserve Bank was federal instrumentality and, thus, immune from certain state and local taxes under 12 U.S.C. § 531); *Brinks Inc. v. Board of Governors*, 466 F. Supp. 116 (D.D.C. 1979) (holding Federal Reserve Bank to be federal instrumentality for purposes of the Service Contract Act, 41 U.S.C. § 351).  However, other courts, particularly in the tort context, have held that Federal Reserve Banks and/or their employees are not governmental actors.  *See Scott v. Federal Reserve Bank of Kansas City*, 406 F.3d 532 (8th Cir. 2005) (in Title VII action against Federal Reserve Bank employee, court determined that "[t]he employees of the Bank are not government employees"); *Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982) (concluding that "the Reserve Banks are not federal instrumentalities for purposes of the FTCA [Federal Tort Claims Act, 28 U.S.C. § 1346(b)], but are independent, privately owned and locally controlled corporations").  In light of the latter opinions which, as opposed to the former ones, address causes of action reasonably analogous to Plaintiff's § 1983 claim, and given the lack of authority on point in the Tenth Circuit, the Court will refrain from disrupting the parties' agreement that FRLEOs "are not government employees."

enforcement officers consistent with policies and procedures adopted by their respective law enforcement unit and based upon a determination that such cross-designation or deputation is beneficial to the performance of Federal Reserve functions and responsibilities." (Doc. # 50-14 at 3.) Defendants assert – although Plaintiff contends he is without sufficient information to admit or deny – that the FRB "has never made this determination and has never sought cross-designation or deputation of its FRLEOs as state or local law enforcement officers." (Doc. ## 50 at 4; 50-2 at 4; 70 at 2.)

## A. MAY 18, 2011 INCIDENT

On May 18, 2011, Plaintiff was demonstrating against the FRB at its Denver location. Around 12:30 p.m., Plaintiff entered the FRB. Thereafter, FRLEO Erickson and an additional FRLEO, who is not a party to this action, began speaking to another man, Ronald Lewis, who was in the vestibule of the FRB standing near Plaintiff. Erickson informed Lewis that, based on a previous incident, he was not allowed to enter the FRB. Erickson asked Lewis multiple times to leave. After Lewis refused to do so, FRLEOs physically removed him from the vestibule. Plaintiff followed Lewis, and the FRLEOs who were trying to restrain him, outside. Plaintiff then began filming the situation with his cellphone, while the FRLEOs continued to try to restrain Lewis. The parties disagree as to what happened next.

Defendants assert that FRLEO Erickson felt that Plaintiff was "uncomfortably close to him," and therefore Erickson "verbally told Plaintiff and gestured for Plaintiff to

move back toward the wall/iron fence that surrounds the Denver Branch building and away from the FRLEOs." (Doc. # 50 at 9.) Plaintiff adamantly denies that he was instructed to move toward the wall or fence and asserts that he was standing "approximately ten feet away from the officers" when Erickson turned his attention toward him. (Doc. # 70 at 6.) According to Defendants, "Plaintiff was still too close to the FRLEOs, and Plaintiff did not move against the wall as directed." (Doc. # 50 at 9.) Plaintiff asserts that he did move back "with no command to do so" having been given. (Doc. # 70 at 6.) The parties agree that FRLEO Gibson then arrived on the scene and physically detained Plaintiff by, among other means, putting him in handcuffs. However, Defendants assert that "Plaintiff was struggling and pulling away from the FRLEOs" (Doc. # 50 at 10), which Plaintiff denies (Doc. # 70 at 7).

The parties have both submitted video evidence of the encounter. (*See* Doc. ## 52; 60-1.) Defendants' surveillance video is silent, which renders difficult, if not impossible, the Court's ability to discern whose version of the facts is correct. (*See* Doc. # 52.) Plaintiff's cellphone video, which is significantly shorter than the surveillance video, contains audio, but it is not clear whether the audio captured everything that was said. (*See* Doc. # 60-1.) At this point in the proceedings, the Court is required to view the evidence in the light most favorable to Plaintiff, the non-moving party. *See, e.g.*, *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013). Accordingly, given the video evidence, the Court determines that, for purposes of Defendants' summary judgment motion, FRLEO Erickson did not gesture to or tell Plaintiff to move toward the

4

wall/iron fence that surrounds the FRB.  As such, the Court necessarily determines that Plaintiff did not fail to heed Erickson's command.  Further, the Court finds for purposes of the current motion that Plaintiff did not struggle or pull away from the FRLEOs when he was detained, as the video evidence does not clearly substantiate such action on the part of Plaintiff.

Once Plaintiff was handcuffed, the FRLEOs brought him back into the vestibule of the FRB.  Several minutes later, officers from the Denver Police Department ("DPD") arrived.  The DPD officers took custody of Plaintiff and charged him with violating three provisions of the Denver Municipal Code ("DMC"), which provide in pertinent part as follows:

(1)  Sec. 38-31. Interference with police authority.

    (a) It shall be unlawful for any person, in any way, to interfere with or hinder any police officer, any member of the police department, or any person duly empowered with police authority, while such officer, member, or person duly empowered with police authority is discharging or apparently discharging their duties.

(2)  Sec. 38-32. Resisting any police authority.

    (b) It shall be unlawful for any person to resist any police officer, any member of the police department, or any person duly empowered with police authority, while such officer, member or person duly empowered with police authority is discharging or apparently discharging their duties.

(3)  Sec. 38-115. Trespass.

    (a) It is unlawful for any person knowingly to enter or remain upon the premises of another when consent to enter or remain is absent, denied, or withdrawn by the owner, occupant, or person having lawful control thereof.

(*See* Doc. # 50-13.)  Plaintiff was then taken to the Denver County Jail, where he was later released after posting bond.  (*See* Doc. # 70-7 at 2.)

**B.     CRIMINAL TRIAL AND AFTERMATH**

The matter proceeded to trial before Judge J. Barajas in Denver County Court on January 19, 2012.  (*See* Doc. # 70-8 at 2.)  FRLEO Erickson testified averring, among other things, that he instructed Plaintiff three separate times to "please step against the fence and give me your ID" and that, each time, Plaintiff refused.  (*Id.* at 38-39.)  At the close of the prosecution's case, Judge Barajas granted Plaintiff's motion for judgment of acquittal as to the trespassing charge but allowed the case to go forward on the "interference with policy authority" and "resisting any police authority" charges.  (*See id.* at 65-66.)  Plaintiff – who was, of course, in the role of defendant during his criminal trial – then testified, at which point it became clear that the prosecution was not in possession of Plaintiff's cellphone, which he said had been taken from him on May 18, 2011.  (*See, e.g., id.* at 85.)  The prosecutor then asked for Judge Barajas to recess the trial, stating:

> Judge, I don't want to proceed if it [*i.e.*, the cellphone video] is exculpatory. I mean obviously if it shows that the defendant was not in violation of any of these other remaining statutes, then I certainly do not want to continue with the prosecution.  So that's part of my concern is [*sic*] I also would like to see and consider exculpatory evidence.  I certainly don't want to put on rebuttal evidence or argue for a conviction if it provides something that would lead toward dismissing it.

(*Id.* at 84.)  The following week, Judge Barajas dismissed the case on the prosecution's motion.  (*See* Doc. # 70-7 at 2.)

6

Plaintiff initiated this action on November 1, 2012.  (Doc. # 1.)  In his Amended Complaint, Plaintiff asserts the following seven causes of action: (1) violation of civil rights pursuant to 42 U.S.C. § 1983; (2) malicious prosecution; (3) abuse of process; (4) false imprisonment; (5) assault and battery; (6) failure to train and/or supervise; and (7) extreme and outrageous conduct.  (Doc. # 39.)  He asserts the first cause of action against all Defendants and the sixth cause of action against only the FRB.  He alleges the remaining causes of action (2-5 and 7) against FRLEOs Erickson and Gibson only. (*Id.*)  Defendants moved for summary judgment (Doc. # 50), and the matter is now ripe for ruling (*see* Doc. ## 70; 79).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs.*, *Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  As mentioned above, when reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving parties.  *Id.*  However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim.  *Adler v Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

## III. **DISCUSSION**

Because the Court's jurisdiction over Plaintiff's state law claims is supplemental to that over Plaintiff's § 1983 claim, the Court will begin its analysis with the constitutional deprivations Plaintiff alleges under § 1983.

A.      **VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**

Plaintiff's first cause of action is for violation of his civil rights under 42 U.S.C.

§ 1983.  (Doc. # 39 at 5.)  Specifically, Plaintiff asserts that his Fourth and Fourteenth

Amendment rights were violated by FRLEOs Erickson and Gibson "in assaulting [him],

arresting him, imprisoning him and bringing false criminal allegations against him . . . ."

(*Id.*)  Such rights were violated by the FRB, according to Plaintiff, because the FRB

"failed to properly train, supervise, or discipline its protection officers . . . ."  (*Id.*)

Ultimately, the Court agrees with Plaintiff that genuine disputes of material fact preclude

entry of summary judgment on these claims.

The Fourth Amendment to the United States Constitution provides, in pertinent

part: "The right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated . . . ."  The

Fourteenth Amendment states, in relevant part: "No State shall . . . deprive any

person of life, liberty, or property, without due process of law."  Such language, and the

jurisprudence developed under both Amendments, establishes "an essential dichotomy

between government action, which is subject to scrutiny . . . and private conduct, which

however discriminatory or wrongful," is not subject to the same constitutional

protections.  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir.

1995) (internal quotation marks and citations omitted).

Section 1983, through which plaintiffs can achieve a remedy for constitutional

violations perpetrated by state officials, evinces a similar dichotomy.  *Id.* at 1447.  The

9

federal cause of action created by § 1983 only pertains to "violations of federal law committed by individuals acting 'under color of state law.'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citing 42 U.S.C. § 1983); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (§ 1983 was designed "to provide protection to those persons wronged by the '[m]isuse of power'").   Therefore, "the only proper defendants in a [§] 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher*, 49 F.3d at 1447 (internal quotation marks, citations, and brackets omitted).   As the Tenth Circuit has noted, "the conduct that constitutes state action under the Fourth and Fourteenth Amendments necessarily constitutes conduct 'under color of law' pursuant to Section 1983." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)).   Section 1983 "creates no substantive civil rights, only a procedural mechanism for enforcing them." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995), *abrogated on other grounds*, *Saucier v. Katz*, 533 U.S. 194 (2001).   As such, a § 1983 claim "requires a plaintiff to show both the existence of a federally-protected right and the deprivation of that right by a person acting under color of state law." *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013).   The Court will address first the "under color of state law" requirement, before

10

assessing whether Plaintiff has established a deprivation of his Fourth and Fourteenth Amendment rights.

     1.   <u>Under Color of State Law</u>

Determining whether specific conduct constitutes state action "frequently admits of no easy answer." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974).  Where a plaintiff seeks to hold a private individual liable as a state actor for constitutional deprivations, the Tenth Circuit has "applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'" *Wittner*, 720 F.3d at 773 (citations omitted).  Under each test, "the conduct allegedly causing the deprivation of a federal right" must be "fairly attributable to the State." *Lugar*, 457 U.S. at 937.  To demonstrate state action, a plaintiff must establish "that the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Gallagher*, 49 F.3d at 1447 (quoting *Lugar*, 457 U.S. at 937).  Further, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. In the instant case, Plaintiff raises only the joint action test in arguing that Defendants acted under color of state law.  (*See* Doc. # 70 at 10 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).)  As such, the Court will confine its analysis to that test.

The Supreme Court has held that if a private party is "a willful participant in joint activity with the State or its agents," then state action is present. *Adickes*, 398 U.S. at

152; *accord Gallagher*, 49 F.3d at 1453.  "Most decisions discussing this concept hold that if there is a substantial degree of cooperative action between state and private officials, or if there is 'overt and significant state participation' in carrying out the deprivation of the plaintiff's constitutional rights, state action is present."  *Johnson v. Rodrigues*, 293 F.3d 1196, 1205 (10th Cir. 2002) (citations omitted).  As opposed to other methods of discerning state action by private individuals, the focus of the joint action test is to discern "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Gallagher*, 49 F.3d at 1453.

Application of this test varies among courts.  As the Tenth Circuit has explained, some courts "have adopted the requirements for establishing a conspiracy under Section 1983."  *Id.*  Under such an approach, "state action may be found if a state actor has participated in or influenced the challenged decision or action."  *Id.*  However, the opposite is true, as well.  *See, e.g.*, *Wagenmann v. Adams*, 829 F.2d 196, 209-11 (1st Cir. 1987) (affirming finding that private citizen was state actor based on evidence that he exerted influence over police investigation).  Other courts have focused more on the manner in which the alleged constitutional deprivation is carried out, reflecting the "cooperative action" and "significant state participation" standards referenced above. The Tenth Circuit cited numerous examples of such cases in *Gallagher*, including:

- *Jackson v. Pantazes*, 810 F.2d 426, 429 (4th Cir. 1987) (finding bail bondsman to be a state actor because he obtained "significant aid" from a police officer in the arrest of the plaintiff);

12

- *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 559 (8th Cir. 1989) (finding state action when police officer relied on store manager's investigation in making arrest instead of conducting independent investigation);

- *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 (5th Cir. 1985) (finding state action when state racing officials issued order denying privileges in response to request of private party).

49 F.3d at 1454.

The Tenth Circuit has "applied the joint action test in several cases involving allegations that private citizens acted in concert with police officers in making arrests." *Id.*  In both *Carey v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir. 1987), and *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987), the Tenth Circuit determined that the citizens who complained to police officers, which resulted in the defendants' arrests, were not state actors.  As stated in *Carey*, nothing indicated that the allegedly unlawful arrests "resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power."  823 F.2d at 1404. In each case, "the record indicated that the police officers had made an independent decision to make the challenged arrest."  *Gallagher*, 49 F.3d at 1454.  In contrast, the Tenth Circuit "concluded that a store security guard who reported a suspected shoplifter to the police was a state actor" in *Lusby v. T.G. & Y. Stores Inc.*, 749 F.2d 1423, 1429 (10th Cir. 1984).  *Gallagher*, 49 F.3d at 1454.  The court "noted that the officer that made

the arrest did not make an independent investigation but relied on the judgment of the security guard." *Id.* The Tenth Circuit applied a similar analysis in *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir. 1982), where the private wrecking company that towed, and subsequently sold, the plaintiff's vehicle was deemed to be a state actor because its actions constituted "an integral part of the deprivation."

In the instant case, Plaintiff asserts that several facts militate in favor of finding that Defendants acted in concert with the DPD and, thus, should be considered state actors under the joint action test. To begin with, according to Plaintiff, and as the video evidence corroborates, FRLEOs Erickson and Gibson were wearing law enforcement-type uniforms, and appear to have been armed accordingly, when they contacted Plaintiff. *See Lusby*, 749 F.2d at 1428 (in determining that store security guard was state actor, court relied on, among other things, fact that guard displayed badge and wore weapon when apprehending alleged shoplifter). Additionally, as opposed to what an ordinary citizen would be capable of when making a citizen's arrest or otherwise detaining a suspected perpetrator, here the FRLEOs handcuffed Plaintiff and held him until the DPD officers arrived. Defendants attempt to counter this point by asserting that "[t]he FRLEOs merely furnished information to the DPD, who then took action against Plaintiff." (Doc. # 79 at 10-11 (citing *Lee*, 820 F.2d at 1115 ("the mere furnishing of information to police officers" by private individual does not constitute joint action)).) However, Defendants entirely ignore the undisputed fact that the FRLEOs physically restrained Plaintiff with handcuffs, which the Court views as far more invasive conduct

14

than when a private party simply informs the police of suspected unlawful activity or "ask[s] that the suspect be searched," *see Lee*, 820 F.2d at 1116.

Further, Defendants have failed to demonstrate that the DPD officers conducted their own independent investigation, instead of just relying on the judgment of the FRLEOs.  At this point, the factual record is unclear as to what occurred when the DPD officers arrived.  Cutting in Plaintiff's favor, however, is some evidence in the case which suggests that what happened to Plaintiff might be part of a customary procedure or policy that the FRLEOs maintain.  FRLEO Gibson averred that the FRLEOs "were told to make arrests only on the [bank] property and to call Denver PD if [they] witnessed anything else."  (Doc. # 70-11 at 3.)  Such procedure or policy could be problematic for Defendants if coupled with evidence tending to prove that DPD officers regularly rely on the word of FRLEOs without determining for themselves if probable cause exists for an arrest.  *See Carey*, 823 F.2d at 1404; *Lusby*, 749 F.2d at 1429.  For now, the Court construes any ambiguity in the record in Plaintiff's favor.[2]

Moreover, irrespective of the factual information on which the DPD officers based their arrest of Plaintiff, no dispute exists as to the charges they brought.  In addition to the trespassing citation, the charges alleged that Plaintiff had interfered with or resisted "any person duly empowered with police authority."  DMC Sec. 38-31; 38-32.  As such,

---

[2] For the same reason, the FRB is not entitled to summary judgment, because a genuine dispute of material fact exists as to whether the FRB maintains a policy or custom under which its law enforcement officers cause private individuals to be arrested through the use of state police authority.  *See, e.g.*, *Burns v. Buford*, No. 10-cv-02691, 2012 WL 2319037, at *2 (D. Colo. June 19, 2012) (unpublished) ("In order to hold a private actor liable for the alleged constitutional violations of its agents, a plaintiff must show that the private actor directly caused the constitutional violation by instituting an 'official municipal policy of some nature' that was the 'direct cause' or 'moving force' behind the constitutional violation.").

the deprivation of which Plaintiff complains can fairly be said to have been caused by a rule of conduct imposed by the state. *See Gallagher*, 49 F.3d at 1447; *Lugar*, 457 U.S. at 937. After all, it was DPD officers who charged Plaintiff, accusing him of interfering with/resisting police authority – authority with which the officers obviously believed the FRLEOs were duly empowered. These charges, based on the conduct of what the parties agree are non-governmental employees, permit the Court to draw in Plaintiff's favor the inference that the FRLEOs' police authority derived from the state.[3] They also demonstrate that the actions of the DPD officers constitute more than "mere

---

[3] To be sure, the Court recognizes that Plaintiff may have contemplated bringing his constitutional claims against the FRLEOs under *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971), which permits a claim for damages arising out of constitutional violations attributable to federal action. However, courts are divided as to when *Bivens* suits are tenable against private individuals acting under color of federal law. *Compare, e.g.*, *Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994) (no cause of action against private parties acting under color of federal law), *with, e.g.*, *Dobyns v. E-Sys., Inc.*, 667 F.2d 1219 (5th Cir. 1982) (allowing cause of action against private parties acting under color of federal law). Moreover, the Supreme Court recently held that prisoners cannot assert Eighth Amendment *Bivens* claims against private prison employees. *Minneci v. Pollard*, 132 S. Ct. 617 (2012). The extent of the Supreme Court's holding in *Minneci* is a matter of some dispute. *Compare, e.g.*, *Vega v. United States*, No. C11-632-RSM, 2012 WL 5384735, at *2 (W.D. Wash. Nov. 1, 2012) (unpublished) ("*Minneci* clarified that private employees acting under color of federal law cannot be held liable under *Bivens*"), *vacated in part on other grounds*, No. C11-632-RSM, 2013 WL 1333978 (W.D. Wash. April 1, 2013) (unpublished), *with, e.g.*, *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *8 n.12 (E.D.N.Y. Mar. 27, 2013) (unpublished) (explicitly disagreeing with those courts that "have read *Minneci* expansively [to find] that it bars all claims against employees of private prisons"). Notwithstanding the ongoing dispute over the reach of *Minneci*, or the apparent inequity in allowing § 1983 claims against private parties acting under color of state law but prohibiting *Bivens* claims against the same parties acting under color of federal law, the Supreme Court's reasoning in *Minneci* seems to apply here, where state tort law appears to provide an "alternative, existing process" capable of protecting the constitutional interests at stake. 132 S. Ct. at 623 (citation omitted). A remedy for Plaintiff's Fourth Amendment claim can be found in the tort of false imprisonment. *See Zenk*, 2013 WL 1232208, at *10 ("[t]he constitutional analog to . . . false imprisonment is the Fourth Amendment"). Likewise, his claim for outrageous conduct can provide relief for the deprivation he asserts under his Fourteenth Amendment substantive due process claim. *See Stoot v. City of Everett*, 582 F.3d 910, 930 (9th Cir. 2009) (addressing outrageous conduct tort claim with same analysis as used for substantive due process claim). The Court presumes that for these reasons Plaintiff did not pursue an alternative argument under *Bivens*.

acquiescence of a state official in the action of a private party." *Gallagher*, 49 F.3d at

1453-55 (determining that state officials' "acquiescence in the practices of" certain

private parties "is insufficient to establish state action under the joint action test");

*Cobb v. Saturn Land Co.*, 966 F.2d 1334, 1337 (10th Cir. 1992) (court clerk's filing

of a lien statement does not constitute overt assistance in private party's allegedly

unconstitutional seizure of property).  The Tenth Circuit has observed that "[g]enerally,

in instances in which courts have found state action based on concerted action between

police officers and private parties, the police have substantially assisted in the allegedly

wrongful conduct." *Gallagher*, 49 F.3d at 1454.  As already indicated, the charges

brought by the DPD officers, as well as the uncertainty contained in the record as to

what occurred when Plaintiff was charged, preclude summary judgment from being

entered in Defendants' favor on the basis of their state action argument.  Accordingly,

the Court will now address whether Plaintiff has sufficiently demonstrated a deprivation

of his Fourth and Fourteenth Amendment rights to survive the instant motion.[4]

    2.    Deprivation of Rights

    Under the Fourth Amendment, a warrantless arrest is reasonable "where there

is probable cause to believe that a criminal offense has been or is being committed."

*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  As such, "when a warrantless arrest

is the subject of a § 1983 action," in order to succeed, a plaintiff must prove that the

---

[4] Defendants did not pursue this line of argument – *i.e.*, they failed to argue that, assuming they acted under color of state law, they did not violate Plaintiff's Fourth and Fourteenth Amendment rights.  Nonetheless, the Court will comment briefly on both of Plaintiff's constitutional claims about which, as explained in the accompanying text, disputed issues of material fact exist.

17

officer(s) "lacked probable cause." *Wilder v. Turner*, 490 F.3d 810, 813-14 (10th Cir.

2007).  "Probable cause exists if the facts and circumstances known to the officer

warrant a prudent man in believing that the offense has been committed." *Henry*

*v. United States*, 361 U.S. 98, 102 (1959).  "The inquiry depends upon the reasonable

conclusion to be drawn from the facts known to the arresting officer at the time of the

arrest." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (internal

quotation marks and citation omitted).

Under the Fourteenth Amendment, "the touchstone of due process is protection

of the individual against arbitrary action of government . . . whether the fault lies in a

denial of fundamental procedural fairness . . . or in the exercise of power without any

reasonable justification in the service of a legitimate governmental objective." *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quotation marks and citations omitted).

Substantive due process claims "are not based on state law but are founded upon

deeply rooted notions of fundamental personal interests derived from the Constitution."

*Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (quotation marks and

citation omitted).  "The 'ultimate' standard for determining whether there has been a

substantive due process violation is 'whether the challenged government action shocks

the conscience . . . .'" *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting

*Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)).

In the instant case, as the Court's recitation of the facts foreshadowed, a genuine

dispute of material fact exists as to whether there was probable cause for Plaintiff's

18

arrest.[5]  As stated previously, based on the current record, including the parties' video

evidence, FRLEO Erickson did not gesture to or tell Plaintiff to move toward the wall or

iron fence surrounding the FRB.  Thus, Plaintiff did not disobey or ignore Erickson's

command.  Nor does it appear that Plaintiff struggled with or pulled away from the

FRLEOs – thereby calling into question the basis for the DPD's charges against him.

As a general matter, "it is a jury question in a civil rights suit whether an officer had

probable cause to arrest."  *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).

Likewise, courts routinely submit the Fourteenth Amendment "shocks the conscience"

standard to juries.  *See, e.g.*, *Walker v. Bain*, 257 F.3d 660, 671-73 (6th Cir. 2001);

*United States v. Walsh*, 194 F.3d 37, 53 (2d Cir. 1999).  Here, Defendants provide no

compelling reason for the Court to deviate from allowing the jury to make these fact-

dependent determinations.

Accordingly, the Court declines to enter summary judgment against Plaintiff on

his § 1983 claim for the violation of his civil rights.

---

[5] Defendants assert, and point to Plaintiff's deposition as substantiating, that Plaintiff was not
arrested by the FRLEOs.  (Doc. # 50 at 11.)  Instead, Defendants contend that Plaintiff was
merely "detain[ed] until the DPD could arrive to effectuate an arrest."  (*Id.* at 29.)  Whether
Plaintiff was arrested when handcuffed and held by the FRLEOs does not depend on Plaintiff's
understanding of what constitutes an arrest but, rather, is a matter well-suited for determination
by a jury.  *See, e.g.*, *Herrera v. Chisox Corp.*, No. 93 C 4279, 1995 WL 599065, at *4 (N.D. Ill.
Oct. 6, 1995) (unpublished) (noting, in § 1983 action, that "whether [the plaintiff] was arrested or
simply detained by the [the defendant security guards] is a disputed question of fact for the jury
to decide").  Moreover, whether the DPD officers' "arrest" of Plaintiff was based on probable
cause depends, to a certain extent, on facts not presently before the Court – including, for
example, whether the DPD officers conducted any independent investigation before taking
custody of, and charging, Plaintiff.

**B.**     **STATE LAW CLAIMS**

For Plaintiff's state law claims, the Court determines that genuine disputes of

material fact exist, which preclude entry of summary judgment on any of those claims.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc.

# 50) is DENIED.

DATED:  September   03  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge